IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO FRANCIS, | ) | CASE NO. 1:19-cv-1510 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| ANDREW SAUL, | ) | |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Antonio Francis, ("Plaintiff" or "Francis"), challenges the final decision of Defendant, Andrew Saul,[1] Commissioner of Social Security ("Commissioner"), denying his applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of Social Security.

1

## I. PROCEDURAL HISTORY

On April 18, 2016, Francis filed an application for POD and DIB, alleging a disability onset date of November 20, 2005, and claiming he was disabled due to Chronic Obstructive Pulmonary Disease ("COPD"), emphysema, and hypertension. (Transcript ("Tr.") at 168, 109.) The applications were denied initially and upon reconsideration, and Francis requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 123-24.)

On May 23, 2018, an ALJ held a hearing, during which Francis, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.* at 37.) On September 6, 2018, the ALJ issued a written decision finding Plaintiff was not disabled. (*Id.* at 19-26.). The ALJ's decision became final on April 30, 2019, when the Appeals Council declined further review. (*Id.* at 1-6.)

On July 1, 2019, Francis filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 12, 14.) Francis asserts the following assignment of error:

(1) Whether the RFC Determination Is Against the Substantial Weight of the Evidence when the ALJ did not conduct a proper analysis of Plaintiff's symptoms pursuant to SSR 16-3p.

(Doc. No. 12 at 1.)

## II. EVIDENCE

**A. Personal and Vocational Evidence**

Francis was born in November 1952 and was 55 years-old at the time he was last insured, making him an "individual of advanced age" under social security regulations.[2] (*Id.* at 25.) *See* 20

---

[2] Plaintiff's brief states that Francis did not turn 55 until November 2008. (Doc. No. 12 at 2.) However, this appears to be a mathematical error, as an individual born in November 1952 would turn 56 in November 2008.

C.F.R. §§ 404.1563 & 416.963. He has a limited education and is able to communicate in English. (*Id.*) He has past relevant work as a roofer and a small business owner. (*Id.* at 24-25.)

**B.      Relevant Medical Evidence**[3]

On July 26, 2007, a chest x-ray taken at Summa Health's Barberton Hospital showed that Francis had "borderline cardiac size" and "increased lucency of the lungs representing changes of emphysema." (*Id.* at 462.) Reviewing physician Padmaja Athota found no acute process in the chest. (*Id.*)

On August 14, 2007, Dr. Robert Hines, performed a Pulmonary Function Test on Francis. (*Id.* at 437.) Dr. Hines found Francis had the following pulmonary issues:

- moderate large airway obstructive ventilatory defect with an immediate response to aerosolized bronciodilators;

- severely reduced maximal voluntary ventilation;

- moderate defect in gas exchange;

- elevated airway resistance;

- mild hyperinflation; and

- early airway closure and trapping.

(*Id.* at 437-38.)

On November 16, 2009,[4] Dr. Hines, performed another Pulmonary Function Test on Francis.

---

[3] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

[4] Francis' date last insured is September 30, 2008. (Tr. 109.) This test is included here because Francis argues it should have been relied upon in the ALJ's decision. Francis describes additional medical evidence from 2011-2016, but he does not assert that it is relevant - or even cite it in his argument - and therefore it is not included here.

3

(*Id.* at 434.) Dr. Hines found that Francis had a severe large airways obstructive ventilatory defect and a mild defect in gas exchange, with a decreased flow rate at all lung volumes consistent with obstruction. (*Id.*)

**C.     State Agency Reports**

On July 6, 2016, state agency reviewing physician Abraham Mikalov considered the record and opined that there was insufficient evidence to evaluate Francis' ability to function during the time period at issue and did not support a finding of disability at any time through September 30, 2008. (*Id.* at 96-97.)

On October 18, 2016, state agency reviewing physician William Bolz considered the record and concurred with Dr. Mikalov's opinion. (*Id.* at 104-05.)

**D.     Hearing Testimony**

During the May 23, 2018 hearing, Francis testified to the following:

- He was born in November 1952, and currently lives in Akron, Ohio, with his wife. (*Id.* at 43.)

- He has three grown daughters, all of whom still live in the area. (*Id.* at 44.)

- He has a driver's license, and is able to drive. (*Id.*)

- He completed tenth grade, then left school to work. (*Id.* at 45.)

- Currently, he is selling off his tools on eBay, because he can no longer use them. He earns about $500 a year from these sales. (*Id.* at 46.)

- He bought three single-family homes with the profits from his roofing business, and earns some money from renting them. (*Id.* at 47-48.)

- He purchased the properties between 2003 and 2007. (*Id.* at 48.)

- The first two properties required fixing up before they could be rented. He did the roofing and siding himself, and paid contractors to do the work he couldn't handle,

    including new sewers and a gas line.  (*Id.* at 48-50.)

- Since then, the houses have been rented almost all the time.  (*Id.* at 50.)

- He filed taxes on this rental income under the name of "Tony's Roofing," and has copies of the tax returns from this business.  (*Id.* at 51.)

- He stopped his roofing business in 2005.  (*Id.* at 52.)

- He didn't have to do regular maintenance work on the houses after he initially fixed them up.  He did have to find renters, collect the rent, evict renters, and clean up after renters left.  He now pays someone else to do work like replacing carpet or painting and repairing walls when the renters leave.  (*Id.* at 53.)

- He was the only person involved in managing the properties.  He found renters by advertising on Craigslist.  (*Id.* at 54.)

- He had employees working as roofers.  He worked alongside his employees on the roofing jobs.  (*Id.* at 55.)

- Initially, he had to advertise the roofing business, but once his business was established he developed a good reputation and so he didn't have to advertise to get work.  (*Id.*)

- He found the roofing jobs, found and managed the employees, hired and fired, got the jobs completed and collected the money.  (*Id.* at 56.)

- He also did the physical labor of roofing, including carrying 80-pound bundles of shingles up a ladder onto a roof.  (*Id.* at 57.)

- He had to stop working because he could no longer "lug stuff around," and just going up the ladders would leave him out of breath.  (*Id.* at 62.)

- He started coughing up blood around 2005 and he went to Dr. Hines, who told him what his problem was.  (*Id.* at 63.)

- From 2005 to 2008, he was taking Albuterol and Advair daily.  That was the only treatment he received for his breathing problems during that time. (*Id.* at 64-65.)

- He tried to quit smoking beginning in 2005, but would backslide.  He finally "quit for good" in 2013.  (*Id.* at 65-66.)

- He stopped smoking marijuana one or two years ago.  (*Id.* at 66.)

5

- At the most, he smoked a pack of cigarettes and a joint per day. (*Id.* at 67.)

- He hasn't consumed alcohol in 15 or 20 years. (*Id.*)

- His medical records state that he quit smoking for good in November 2015. That sounds right to him. His primary care doctor gave him patches, but they didn't help. (*Id.* at 68.)

- In 2011, he was still able to manage his rental properties, because that was basically just cleaning up after departed tenants. (*Id.* at 69.)

- In early 2013, he was having problems managing his rental properties, because he couldn't do things like replacing a toilet or cutting and removing carpet while wearing his breathing apparatus. (*Id.* at 69-70.)

- He is selling his motorcycles because he can't ride them while wearing his oxygen. He already sold one, and is trying to sell the other. (*Id.* at 70.)

- He rode a motorcycle once in the current year, and only twice the year before. (*Id.* at 71.)

- When he first stopped working in 2005, he would take his medication and help around the house, doing dishes, yard work, and cleaning. (*Id.* at 72.)

- His wife did the grocery shopping because he could not. (*Id.* at 73.)

- His yard work during that period including weeding, mowing, brooming the snow and using a snow blower. (*Id.*)

- He later bought a four-wheel drive truck with a plow to clear snow. (*Id.* at 73-74.)

- Both cold and humidity make it harder for him to breathe. (*Id.* at 74-75.)

- Bending over now makes him get out of breath, but that wasn't a problem in 2005. (*Id.* at 75.)

- The Albuterol he was taking was in a nebulizer. (*Id.*)

- His daughter's boyfriend helped him over the years with the rentals, carrying heavy things during clean outs, but when the boyfriend and the daughter split up in 2017, he lost his helper. (*Id.* at 79-80.)

- He only needed to clean out the houses once a year at most. Sometimes renters

>  stayed as long as five years. (*Id.* at 80.)

The VE testified Francis had past work as a roofer, a small business owner, a rental agent and a property investor. (*Id.* at 82-83.) The ALJ then posed the following hypothetical question:

> I would like you to assume a hypothetical individual of the claimant's age and education with the past jobs you have described. I would like you to further assume that that individual can perform medium work as defined in the regulations with the following additional limitations. He must avoid concentrated exposure to extreme temperatures, humidity, poor ventilation, and pulmonary irritants such as dust, odors, fumes, and gases.

(*Id.* at 83-84.)

The VE testified the hypothetical individual would be able to perform Francis' past work as a rental agent and property investor. (*Id.* at 85.) The VE further explained the hypothetical individual would also be able to perform other representative jobs in the economy, such as a cleaner II, cook helper, or laundry worker II. (*Id.*)

The ALJ then posed a second hypothetical question:

> I would like you to an individual who can perform medium work as defined in the regulations with the following additional limitations. He must avoid frequent exposure to extreme temperatures, humidity, poor ventilation, and pulmonary irritants such as dust, odors, fumes, and gases. He can occasionally climb ladders, ropes or scaffolds and must avoid constant exposure to workplace hazards such as unprotected heights and moving mechanical parts.

(*Id.* at 83-84.)

The VE testified that the hypothetical worker could still perform the jobs that he identified. (*Id.*)

Next, the ALJ asked if amending either of the hypotheticals to include a limitation restricting the hypothetical individual to light work as defined in the regulations would permit that hypothetical individual to do any work. (*Id.* at 86-87.) The VE testified that either hypothetical individual could

7

still perform Francis' work as a rental agent or property investor, and also perform jobs such as cashier II, cafeteria attendant, or assembler of plastic hospital products. (*Id.* at 87-88.)

Finally, the ALJ asked how much off task time and how many absences would normally be tolerated for an individual in the jobs identified by the VE. (*Id.* at 88.) The VE testified that less that 15 percent of time off-task and one absence per month would not impact job retention. (*Id.* at 88-89.)

### III.  STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at

923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

Here, Francis was insured on his alleged disability onset date, November 20, 2005, and remained insured through September 30, 2008, his date last insured ("DLI.") (Tr. 109.) Therefore, in order to be entitled to POD and DIB, Francis must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2008.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 20, 2005 through his date last insured of September 30, 2008.

9

3. Through the date last insured, the claimant had the following severe impairment: chronic obstructive pulmonary disease (COPD)/emphysema.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he must avoid frequent exposure tp extreme temperatures, humidity, poor ventilation, and pulmonary irritants such as dust, odors, fumes, and gases; he can occasionally climb ladders, ropes, or scaffolds; and must avoid constant exposure to workplace hazards such as unprotected heights amd moving mechanical parts.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on November 23, 1952 and was 55 years old, which is defined as an individual of advanced age, on the date last insured.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 20, 2005, the alleged onset date, through September 30, 2008, the date last insured.

(Tr. 21-26) (citations omitted).

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social

Security Administration (SSA).*" Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.") This is so because there is a "zone of choice" within which the Commissioner can act without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial

evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

**A.      First Assignment of Error: Substantial weight of the evidence**

Francis asserts that the ALJ erred by failing to analyze his symptoms in accordance with the procedure set forth in SSR 16-3p, and therefore adopted a finding of Residual Functional Capacity ("RFC") that is against the substantial weight of the evidence. (Doc. No. 12 at 1.) He asserts that the ALJ inaccurately characterized the results of his diagnostic tests as "largely unremarkable," when

they showed he was unable to perform the exertional demands of medium work. (*Id.* at 8.) He argues the ALJ should have considered the results of a second diagnostic test performed in November 2009, and should not have made a finding of medical non-compliance based on Francis' testimony about smoking during the period at issue. (*Id.*) Finally, he alleges that the ALJ wrongly inferred from Francis' testimony regarding his activities of daily life that he had been able to meet the exertional demands of medium work on a sustained basis. (*Id.* at 10.)

The Commissioner asserts the ALJ reasonably concluded that the existing evidence was not consistent with Francis' allegation of disability. (Doc. No. 14 at 5.) He points out there is a dearth of objective evidence covering the period at issue. (*Id.* at 5.) He asserts that the ALJ properly considered the totality of the record including objective medical evidence; the conservative course of treatment recommended by Francis' treating physicians; Francis' testimony regarding his non-compliance with his doctor's directive to stop smoking and his activities of daily life; and the only two medical opinions in the record, which were provided by state agency reviewing physicians. (*Id.* at 6-8.)

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 416.927(d)(2).[5] An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R.§ 416.927(d)(3). As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.946(c), and must

---

[5] This regulation has been superseded for claims filed on or after March 27, 2017. As Francis' application was filed in March 2016, this Court applies the rules and regulations in effect at that time.

consider all of a claimant's medically determinable impairments, both individually and in combination. *See* SSR 96 8p, 1996 WL 374184 (SSA July 2, 1996).

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer*, 774 F. Supp. 2d at 880 (citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [. . .] contradictory, objective medical evidence' presented to him.")). *See also* SSR 96 8p at *7, 1996 WL 374184 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.")). While the RFC is for the ALJ to determine, it is well established that the claimant bears the burden of establishing the impairments that determine his RFC. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

The medical evidence in this case is very limited. The only pieces of objective medical evidence that either party discusses from the two years and eleven months at issue are an x-ray and a pulmonary function test. (Doc. No. 12 at 7-8, Doc. No 14 at 5.) The x-ray, taken July 26, 2007, showed emphysema. (Tr. 462.) The pulmonary function test, taken August 14, 2007, demonstrated that Francis could not "maintain the high levels of ventilation as is required during exercise," but retained "a normal total lung capacity." (*Id.* at 437.) The ALJ recognized this impairment, and adopted an RFC limiting Francis to "medium work."

Francis asserts the ALJ erred by failing to address a second pulmonary function test taken

14

in November 2009. (Doc. No. 12 at 8.) This test was taken more than a year after the date he was last insured, and Francis offers no evidence that it is relevant to his pulmonary function during the period at issue. Therefore, it is not error for the ALJ to omit it from consideration.

The two medical opinions in the record are both offered by the state agency reviewing physicians. They opined that there was insufficient evidence in the record to determine Francis' RFC during the time at issue, and found he was not disabled during the period at issue. (Tr. 96-97, 103-04.) The ALJ gave these opinions "little weight" because neither doctor had the opportunity to review the full record. (*Id.* at 24.) However, he agreed with their conclusion that Francis' impairments were not disabling. (*Id.*)

At his hearing, Francis explained that the lack of medical evidence from this period was the result of the fact that his treating physician at the time, Dr. Hines, had retired. (Tr. 77.) Francis had been unable to contact Dr. Hines or obtain his treatment notes. (*Id.*) While unfortunate, this does not relieve Francis of the burden of establishing the impairments that determine his RFC. *See Her*, 203 F.3d at 391. Although it is the ALJ's duty to fully develop the administrative record, an ALJ is permitted to presume a claimant represented by counsel has presented his best case before the ALJ. *See Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d, 1048, 1051 52 (6th Cir. 1983); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002). Ultimately, "[t]he burden of providing a complete medical record rests with the claimant." *Weeks v. Shalala*, No. 94 5948, 1995 WL 521156, at *2 (6th Cir. Sept. 1, 1995) (Table).

It was appropriate for the ALJ to consider the treatment that Francis received, and to infer that the medication he was prescribed controlled his symptoms because he sought and received no additional treatment. *See, e.g., Kepke v. Soc. Sec. Admin.*, 636 F. App'x 625, 638-639 (6th Cir. Jan.

12, 2016) (finding the ALJ reasonably found Plaintiff's credibility was damaged based on her "routine and/or conservative treatment for the allegedly disabling impairments"); *McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680 at *4 (6th Cir. May 19, 2000) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."), citing 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ can consider medication and other treatment when assessing credibility). Francis testified that he initially saw Dr. Hines once every six months, and then reduced his visits to once a year. (Tr. 65.) This testimony is consistent with the conservative treatment documented in the existing records.

The ALJ properly gave consideration to the fact that Francis did not follow through on his doctor's recommendation to stop smoking during the period at issue in this case. An ALJ should consider a claimant's non-compliance with treatment when assessing the claimant's limitations and credibility. *See* 20 C.F.R. § 416.930(b) ("if you do not follow the prescribed treatment without a good reason, we will not find you disabled"); 20 C.F.R. § 416.929(c)(3)(iv, v) (in considering the severity and limiting effects of an impairment, an ALJ may consider the effectiveness of medication the claimant has taken and treatment she received). *See also Hawley v. Comm'r of Soc. Sec.,* No. 2:15-cv-12497, 2016 WL 8671206 at *6 (E.D. Mich. July 22, 2016) ("An ALJ may consider a claimant's failure to comply with treatment as a sufficient reason to discount credibility."); *Beadle v. Comm'r of Soc. Sec.*, 2016 WL 7335808 at *9 (N.D. Ohio Nov. 3, 2016) (same); *Soto v. Comm'r of Soc. Sec.*, No. 1:13CV656, 2014 WL 1576867 at *8 (N.D. Ohio April 18, 2014) ("Non-compliance is an appropriate ground for adversely assessing a claimant's credibility.") Francis asserts that "there was no indication whatsoever in the record that plaintiff refused any treatment recommendations." (Doc. No. 12 at 9.) However, he testified that Dr. Hines instructed him to quit smoking at the time

16

of his diagnosis in 2005, and he continued to smoke until 2015. (Tr. 65, 68.)

The ALJ also based her decision on Francis' self-report of engaging in activities like cleaning the garage and doing yard work including weeding, mowing, brooming the snow, and snowblowing. (Tr. 24.) Francis argues that the ALJ should have given more weight to the activities he stated that he could not do, such as grocery shopping. (Doc. No. 12 at 10.) However, Francis' testimony about his limitations, given nearly ten years after the period at issue, was somewhat contradictory. For example, he testified that it was difficult for him to be in cold weather, but also that he had been able to continue snowblowing until 2016. (Tr. 70, 74.) He testified that any kind of bending caused him shortness of breath, but also that, as recently as 2013, he was able to cut carpet on the floor into three-foot lengths, roll it, tape it, and throw those small bundles out the window of one of his rental homes. (*Id.* at 70, 75.) He testified that he stopped working in 2005 when he was no longer able to lug 80 pound bundles of shingles up ladders. (*Id* at 62.) This is not inconsistent with "medium work" under the Social Security Regulations, which requires the ability to lift no more than 50 pounds at a time, with frequent lifting and carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c).

Under the circumstances presented, it was reasonable for the ALJ to discount Francis' subjective complaints in formulating the RFC, and find him capable of medium work. Francis urges the Court to find that the reasons given by the ALJ do not demonstrate a lack of credibility, but it is not this Court's role to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). *See also Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 807 (6th Cir.

2008) (stating that "it squarely is *not* the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.") The ALJ provided sufficiently specific reasons for her evaluation of Francis' subjective symptoms and supported those reasons with reference to sufficient evidence in the record. Francis' argument to the contrary is without merit.

## VII. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

*s/Jonathan D. Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

Date: March 6, 2020

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**